HAARMAN & REIMER CORPORATION, PLAINTIFF *v.* UNITED STATES; MALCOLM BALDRIGE, SECRETARY OF COMMERCE; PAUL O'DAY, ACTING UNDERSECRETARY OF COMMERCE FOR INTERNATIONAL TRADE, DEPARTMENT OF COMMERCE; WILLIAM T. ARCHERY, ACTING COMMISSIONER OF CUSTOMS, AND ALL DISTRICT DIRECTORS OF CUSTOMS, DEFENDANTS AND CHINA NATIONAL NATIVE PRODUCE & ANIMAL BY-PRODUCTS IMPORT AND EXPORT CORPORATION, INTERVENOR

Court No. 81-1-00027

(Dated March 16, 1981)

*Eugene L. Stewart, Terence P. Stewart* and *Paul W. Jameson* on the memorandum brief (*Eugene L. Stewart* at the oral argument) for the plantiff.

*Thomas S. Martin,* Acting Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, on the memorandum brief (*Velta A. Mclnbrencis* with him on the brief and at the oral argument), for the defendants.

*Shearman & Sterling* (*Donald L. Cuneo* on the memorandum brief and *Charles B. Manuel, Jr.* with him at the oral argument), for China National Native Produce & Animal By-Products Import and Export Corporation, intervenor.

BOE, Judge: In filing its motion for rehearing requesting this court to reconsider its decision in its Memorandum Opinion and Order under date of February 2, 1981, denying plaintiff's application for a preliminary injunction, the plaintiff asserts that certain pertinent points and authorities then presented were not considered by this court.

Contrary to the misapprehension of counsel for plaintiff, the silence of this court with respect to some arguments which may have been raised by him or with respect to certain authorities cited in the hearing on plaintiff's application for a preliminary injunction, cannot be interpreted as a lack of consideration thereof by this court. Counsel has presented his arguments particularly with respect to the decisions in the *Timken Company* v. *Simon,* 539 F. 2d 221 (D.C. Cir. 1976) and *The Budd Company, Railway Division* v. *The United States,* 1 CIT 67, Slip Op. 80-15 (Dec. 29, 1980), at length in the oral argument at the hearing on plaintiff's application for a preliminary injunction. A continuation of the same arguments has been vigorously pursued in plaintiff's present motion for rehearing.

In light of plaintiff's uncertainty as to this court's understanding of the full import of the *Timken* and *Budd* decisions, this court will unequivocally state that it does not deem these decisions to be ap-

plicable to nor supportive of plaintiff's position in the present proceeding in which he now seeks reconsideration.

It is elementary that one of the showings prerequisite to the granting of a preliminary injunction is the likelihood that the applicant may be successful in the trial of its cause of action on the merits. In its prior order denying plaintiff's application for a preliminary injunction, this court predicated its decision principally on the foregoing prerequisite, pointing out in its opinion that the action instituted by the plaintiff has not been brought in conformity with the provisions of the Trade Agreements Act of 1979, and specifically 19 U.S.C. 1516a, which solely and exclusively provides for the time and manner of judicial review of the subject matter of the within action—namely, the preliminary negative determination of the administering authority as to critical circumstances in connection with its affirmative determination of less than fair value sales in an antidumping proceeding.

The *Timken* decision, upon which the plaintiff relies so strenuously, in no manner has been deemed applicable to the instant proceeding. In *Timken* the jurisdiction of the U.S. District Court was sought to obtain injunctive relief, *not then available* in the U.S. Customs Court, to enforce the immediate implementation of an affirmative less than fair value determination by the Treasury Department and the affirmative injury determination by the International Trade Commission, which the Secretary of the Treasury in his ministerial capacity was seeking to impede and delay by requiring immediate appraisement of the merchandise in question. As the appellate court stated in the *Timken* case, supra at 226:

> The gravamen of Timken's complaint is that the Secretary has acted beyond his statutory authority in revoking the withholding of appraisement notice and ordering appraisement of the subject entries prior to his publication of a dumping finding. If section 516 enabled Timken to get judicial review of that issue in the Customs Court, we would not hesitate to reverse the District Court assertion of jurisdiction in this case.

The plaintiff likewise in its memorandum in support of its motion for rehearing at page 4 has correctly stated the true posture in which the *Timken* decision should be viewed:

> The *Timken* case thus stands for the principle that district courts could assert jurisdiction over antidumping related matters for which no adequate remedy existed in the Customs Court.

The facts and circumstances in the instant proceedings and the cause of action upon which such proceedings are predicated are to no extent analogous to those presented in *Timken*. The determination of the Commerce Department with respect to the existence of critical

circumstances was a substantive determination and not a ministerial act or decision as involved in *Timken*.

The *Timken* decision was decided in 1976. In reaching its decision at that time the appellate court concluded that the legislative history provided no persuasive evidence indicating that nonreviewability was intended by the Congress and that, accordingly, the U.S. District Courts could assert jurisdiction in antidumping matters for which no adequate remedy *then* existed in the Customs Court.

From an examination of the legislative history relating to the subsequent enactment of the Trade Agreements Act of 1979 and the Customs Court Act of 1980, however, it appears abundantly clear that Congress has prescribed therein the time, nature, and method of the judicial review of administrative agency action relating to antidumping determinations. It is deemed unwarranted to reiterate the comments, quoted at length in this court's prior opinion under date of February 2, 1981, contained in the House Judiciary Committee Report relating to the enactment of 28 U.S.C. 1581(i), under which the plaintiff erroneously seeks to predicate its action, the relationship thereof to the Trade Agreements Act of 1979 and the exclusive review of agency determinations specifically provided for therein.[1] (19 U.S.C. 1516a).

Suffice it to further say, plaintiff's counsels' analysis and interpretation of the *Budd* decision, indeed, appear to bear little resemblance to the express holding of this court therein. In plaintiff's memorandum in support of its motion for rehearing, the holding of this court in the *Budd* decision is questionably summarized by counsel at page 2:

> In *Budd* this court held that the International Trade Commission's preliminary negative injury determination was *unlawful* because the ITC's lack of diligence in seeking information available to it was contrary to the Congressional mandate to conduct a thorough investigation. [Italic supplied.]

This court fails to discern any language contained in the *Budd* decision construing the preliminary negative injury determination of the International Trade Commission as *unlawful*. The decision in every action and the language expressed therein must be viewed in connection with the posture and nature of the particular proceedings before the court and concerning which the decision refers. In the *Budd* case the preliminary negative injury determination made by the International Trade Commission was formally presented to this court for judicial review pursuant to statutory authority by the filing of a summons, complaint and answers, followed by cross-motions

---

[1] House Judiciary Committee Report, H.R. Rept. No. 96-1235 at 47-48.

for summary judgment, pursuant to the provisions of 19 U.S.C. 1516a as enacted by the Trade Agreements Act of 1979.

In its decision this court, although calling attention to the statutorily mandated investigative obligations of the Commission independent of any burden of proof falling upon the petitioner, neither attempted to define the extent of a "thorough investigation" which should be conducted in every preliminaryi nvestigative proceeding, nor prescribed a definitive measurement of that information which might be "reasonably available" in *every* proceeding. On the contrary, this court in the *Budd* decision requested the International Trade Commission, after consideration of certain documents and available evidentiary facts, to supplement and/or amplify its findings of fact, if warranted, for the purpose of informing this court in its judicial review determination more specifically as to the rational basis upon which the Commission's determination was founded. Indeed, the foregoing directive contained in the order of remand in the *Budd* decision is a far cry from the characterization thereof made by plaintiff's counsel that the preliminary negative determination of the Commission was unlawful.

In the *Budd* case the preliminary negative determination of the International Trade Commission was properly before this court pursuant to the provisions of 19 U.S.C. 1516a. The instant proceedings however, as hereinbefore stated, has not been brought in conformity with the Trade Agreements Act of 1979 which solely and exclusively provides for the time and manner of judicial review of determinations relating to antidumping. The plaintiff by predicating his action under the provisions of 28 U.S.C. 1581(i), which clearly does not create a cause of action, seeks to attain through indirection a judicial review which the statutes and the legislative history advise are within the exclusive purview of the provisions provided for in the Trade Agreements Act of 1979.

The absence of a specific provision for judicial review of a preliminary negative determination by the administering authority cannot be presumed, in view of the legislative history, to be an unintentional omission thereby justifying judicial review under the residual jurisdictional grant provided by 28 U.S.C. 1581(i). Rather, such an absence conforms to the pattern of congressional intent evidenced in the statutory provisions of the Trade Agreements Act of 1979 and by legislative history to postpone judicial review until the time the final determination is made by the administering authority in accordance with the provisions of 19 U.S.C. 1673d.

In view of the fact that this court is satisfied that the plaintiff will be unable to prevail in the trial of this action on the merits, the application of the plaintiff for a preliminary injunction necessarily fails.

The opinion of this court, contained in its prior memorandum and order denying plaintiff's application for a preliminary injunction, determining that the plaintiff has failed to sustain its burden of demonstrating that irreparable injury will result to it by the failure of this court to grant its application for a preliminary injunction is reaffirmed herein.

It is, accordingly, hereby

ORDERED that the motion of the plaintiff for rehearing of this court's opinion and order denying its application for a preliminary injunction made and entered under date of February 2, 1981, is in all things denied.